IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

RICKY WHETSTONE,                )
                                )
         Plaintiff,             )
                                )
v.                              )     Civil Action No.   3:13CV684-WHA
                                )
SL ALABAMA, LLC,                )     (wo)
                                )
                                )
         Defendant.             )

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This case is before the court on a Motion for Summary Judgment (Doc. #16), filed by SL Alabama, LLC on May 30, 2014.

The Plaintiff filed a Complaint in this case on September 23, 2013, bringing claims of retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended and 42 U.S.C. § 1981 (Count I) and race discrimination, also in violation of Title VII and 42 U.S.C. § 1981 (Count II).

For the reasons to be discussed, the Motion for Summary Judgment is due to be GRANTED.

**II.   SUMMARY JUDGMENT STANDARD**

Summary judgment is proper "if there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of

informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Id.* at 324.

Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56 (c)(1)(A),(B). Acceptable materials under Rule 56(c)(1)(A) include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."

To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

### III. FACTS

The submissions of the parties establish the following facts, construed in a light most

favorable to the non-movant:

The Plaintiff, Ricky Whetstone ("Whetstone"), is an African-American man who was employed with SL Alabama for four years, first as a truck driver and then as a fork lift driver. His employment was terminated in November of 2012 for sleeping on the job, and for sleeping on a forklift while it was running. SL Alabama has an Associate Handbook which sets forth its Standards of Conduct Policy for its employees. "Sleeping or loafing on the job," is a type of misconduct which may result in discharge under the policy. (Doc. #17-7 at p.62). Deborah Meeks ("Meeks") was the Human Resources Manager who made the decision to terminate Whetstone's employment.

During his employment with SL Alabama, in May of 2011, Whetstone filed an EEOC charge alleging that his car was towed from a no parking zone because of his race. Meeks was not the Human Resources Manager at the time that EEOC charge was filed. The EEOC sent a facsimile to Meeks's attention in November 2011, however, stating that SL Alabama had not responded to the EEOC charge.

In May 2012, Whetstone transferred from the second production shift to the first production shift. Whetstone has taken the position that soon after his transfer his bathroom and stretching breaks were closely monitored by SL Alabama.

On November 2, 2012, Ryan Kim ("Kim"), Logistics Supervisor, and Team Leader Chris Williams ("Williams") reported to Meeks that Whetstone was observed sleeping on a forklift, while the forklift was running. Whetstone was subsequently terminated for falling asleep on the job, but states that he did not fall asleep on the job. He told Meeks that he sometimes closes his eyes and rolls his head to relieve neck pain.

Meeks made the decision to terminate Whetstone, relying on a photograph of him sitting on the forklift asleep. Meeks stated in a document dated November 2, 2012 that she met with Whetstone and told him that he was observed by Kim and Chris Williams along with other hourly associates who provided written statements that he was sleeping while on the forklift, and that he had been observed sleeping for a 5-6 minute period.

Whetstone contends that he reported that another employee, Kim, was sleeping on the job to his supervisor Jeff Bailey and Williams. He also maintains that he told Meeks that Kim was sleeping on the job. Kim was not terminated. Whetstone claims that his termination was race discrimination and in retaliation for his May 2011 EEOC charge.

## IV. DISCUSSION

Where, as here, a plaintiff seeks to prove intentional discrimination on the basis of race and retaliation under Title VII and § 1981 by using circumstantial evidence of intent, the court applies the framework first set out by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, the plaintiff must establish a prima facie case. *McDonnell Douglas*, 411 U.S. at 802. After the plaintiff has established a prima facie case, the burden of production is placed upon the employer to articulate a legitimate nondiscriminatory reason for its employment action. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The plaintiff may seek to demonstrate that the proffered reason was not the true reason for the employment decision "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 256; *Combs v. Plantation*

4

*Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997). A plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated or retaliated. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 147 (2000). Even if a plaintiff establishes a prima facie case and offers sufficient evidence of pretext as to each of the proffered reasons, summary judgment "will sometimes be available to an employer in such a case." *Chapman v. AI Transport*, 229 F.3d 1012, 125 n.11 (11th Cir. 2000).

The court begins with the grounds asserted for summary judgment as to the retaliation claims, and then will address the discrimination claims.

A. Retaliation

A prima facie case of retaliation contains three elements: first, the plaintiff engaged in statutorily protected conduct; second, the plaintiff suffered an adverse employment action; and finally, the adverse action was causally related to the protected expression. *Williams v. Motorola, Inc.*, 303 F.3d 1284, 1291 (11th Cir. 2002) (quotation omitted). An action is materially adverse if it might dissuade "a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). A causal relationship can be established through evidence that the "desire to retaliate" against the protected expression was the "but-for cause" of the adverse action. *See Univ. of Texas Southwestern Med. Ctr. v. Nassar*,__ U.S. __, 133 S.Ct. 2517, 2528 (2013). This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action of the employer. *Id.*

SL Alabama assumes for purposes of its summary judgment motion that Whetstone's May

5

2011 EEOC charge is a protected activity, but contends that there is no "but for" causation for Whetstone's discharge.  SL Alabama states that seventeen months elapsed between the filing of the May 2011 EEOC charge and Whetstone's termination in November 2012.  SL Alabama also states that Meeks, the decision maker, was not employed at SL Alabama when the May 2011 EEOC charge was filed.

Whetstone points to evidence of an EEOC facsimile, dated November 9, 2011, from the EEOC to Meeks's attention which states that no response had been received to Whetstone's EEOC charge, and which attaches the original charge.  (Doc. #23-1 at p.2-5).  Whetstone argues, therefore, that Meeks was aware of his EEOC charge at the time of his termination.

As to the temporal proximity argument made by SL Alabama, Whetstone agrees that if he were limited to temporal proximity of the EEOC charge to his termination to establish causation he would fail to create a question of fact.  Whetstone argues, however, that after he filed his EEOC charge he was told that he was taking too long with his bathroom breaks and was told not to take breaks from the fork lift.  (Doc. #17-1 at 32; Dep. p. 125:18-126:6).  Weeks testified that he needed to take breaks from the forklift to stretch his back because he had earlier had back surgery. (Doc. #17-1 at p. 126: 19-128:6).  He argues that criticism of this practice was a pattern of antagonism following the filing of his EEOC charge.

Evaluation of alleged adverse actions is not limited to a final decision to terminate. *Wideman v. Wal–Mart Stores, Inc*., 141 F.3d 1453, 1456 (11th Cir.1998).  While a longer period of time may exist between the protected activity and an ultimate employment action under a theory that an employer engaged in a series of retaliatory acts, the alleged series of acts must itself begin close in time to the protected activity.  *Id.* at 1457 (stating that "the series of adverse employment

6

actions commenced almost immediately after management learned she had filed the charge.").

In his brief, Whetstone's position is that he had been a target of antagonism "since May 2012 when he transferred to first shift." (Doc. #22 at p.15).[1] The brief then goes on to say that this "is the same time" as his EEOC charge was filed, but the evidence cited, Exhibit 3 to Document 23, is the EEOC charge which is dated May **2011**. (Doc. #23-1 at p.9).

Even accepting that Meeks may have known about the EEOC charge on November 9, 2011, Whetstone's position that the alleged retaliatory acts in this case began after he transferred to the first shift, in May of 2012, means that the alleged pattern of retaliatory acts began approximately 6 months after the facsimile notice of the EEOC charge in November 2011, and, therefore, is too far-removed in time to establish causation.[2] *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir.2007) (holding that three-month period without more is not close enough to establish causal connection); *see also Rollins v. Alabama Community College System,* 814 F.Supp.2d 1250, 1300 -1301 (M.D. Ala. 2011) (finding that the plaintiff did not establish causation because the first of the alleged pattern of actions did not occur almost immediately after the protected activity.). Therefore, Whetstone has failed to establish a prima facie case of retaliation and summary judgment is due to be GRANTED as to this claim.

## B. Race Discrimination

1. Termination

---

[1] In her written report of the termination meeting, Meeks also noted that Whetstone "stated that he felt that he had been a 'target' ever since he came to 1st shift." (Doc. #17-1 at p. 162).

[2] If viewed in comparison to the date of his termination in November 2012, the elapsed time between Meeks's alleged notice of the EEOC charge and the termination is an even longer period.

"[I]n cases involving alleged racial bias in the application of discipline for violation of work rules, the plaintiff, in addition to being a member of a protected class, must show either (a) that he did not violate the work rule, or (b) that he engaged in misconduct similar to that of a person outside the protected class, and that the disciplinary measures enforced against him were more severe than those enforced against the other persons who engaged in similar misconduct." *Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir.1989). The court must "evaluate 'whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways.'" *Burke-Fowler v. Orange County, Fla.,* 447 F.3d 1319, 1323 (11th Cir. 2006).

SL Alabama has provided evidence that Meeks terminated Whetstone because he was sleeping on the job while sitting on a motorized vehicle while it was running. (Doc. #17-1 at p.162). SL Alabama states that Whetstone has failed to point to an appropriate comparator because he has failed to point to evidence of any employee outside of his protected class whom the decision maker believed committed a similar offense and who was not terminated, and he has failed to offer any other evidence of discrimination in his termination. SL Alabama contends that Whetstone has offered no evidence that decision maker Meeks was ever told that Kim fell asleep on the job, or that there was evidence to confirm that it happened.

Whetstone responds that he reported that Kim was sleeping on the job to his supervisors Jeff Bailey and Chris Williams, and that Jeff Bailey was present at his termination meeting. There is no evidence, however, to support that Meeks was made aware of reports made to other management employees.

Whetstone argues that Meeks was aware of his complaint regarding Kim, pointing out that in her memorandum about Whetstone's termination, Document 17-1 at p. 162, dated November 2,

2012, and bearing a handwritten signature of "Debbie Meeks," the following statement is made by Meeks:

> Ricky stated that he and several other associates had taken pictures of other associates sleeping on the job.  I asked him why he had not brought the pictures to me for action and once again Ricky replied, "I didn't want to be a tattle-tale."
> \*\*\*
> I told Ricky that he needed to turn in his badge, car hanger and get his possessions out of his locker.  Jeff Bailey walked Ricky out of the building.

In its reply brief, SL Alabama does not respond to this argument by Whetstone.  The existence of evidence that Meeks was made aware of Kim's alleged sleeping on the job during Whetstone's termination meeting, however, would only preclude summary judgment to the extent that it is a material fact.

In her affidavit, Meeks states that a report was made to her that Whetstone was sleeping on a forklift while it was running.  She conducted an investigation, including receiving a photograph of Whetstone sleeping, and statements from employees that they witnessed Whetstone sleeping. She states that she made the decision to terminate Whetstone, based on her investigation, on November 2, 2012, because sleeping on the job was a violation of the SL Alabama Standards of Conduct Policy, and because sleeping on a motorized vehicle while it was running is a serious safety violation. (Doc. #17-7 at p. 8-9).

In the context of a termination or disparate treatment claim based upon violation of work rules, the court must "evaluate 'whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways.' " *Burke–Fowler,* 447 F.3d at 1323.  The "most important factors in a comparator analysis in the disciplinary context are the nature of the offenses committed and the nature of the punishments imposed." *Rioux v. City of Atlanta, Ga.*, 520

F.3d 1269, 1281 (11th Cir. 2008). A plaintiff must show that the employees are "similarly situated in all relevant respects." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).³

In this case, the undisputed evidence is that Meeks considered it relevant both that Whetstone was asleep, and that he was asleep on a piece of machinery which was still running. There is no evidence that any report was made to Meeks of another employee asleep on a piece of running machinery. Whetstone's report to Meeks that Kim was asleep on the job did not include the relevant factor of being asleep on a piece of running machinery.⁴

Whetstone also argues that Kim and Williams violated the SL Alabama Standards of Conduct by failing to wake him when they saw him allegedly asleep on equipment in operation. He argues that he has been accused of engaging in a safety violation but that their actions were also a safety violation and they were not terminated. As to this argument, the court concludes that to the extent that Kim and Williams's actions violated a safety rule, it was not the same or similar to Whetstone's rules violation.

The court concludes, therefore, that Whetstone has not presented evidence of a valid comparator to establish a prima facie case of discrimination in termination.

Whetstone also argues that there is a question of fact as to whether he committed the charged work violation. Whetstone challenges the evidence of reports made to Meeks by employees Rodrigus Marbury ("Marbury") and Stephforn Leonard ("Leonard"), upon which

---

3 There is some question in the district courts as to whether a "nearly identical" standard which is applied in some cases is the appropriate standard. *See, e.g., Calhoun v. McHugh*, No. 1:11cv4134-VEH, 2014 WL 838763, at *11 (N.D. Ala. March 4, 2013). The lack of a comparator who was reported to have been asleep on a piece of running machinery means that the lower "all relevant respects" standard is not satisfied in this case, so this court need not address this issue.

4 Whetstone testified in his deposition that he did not take a photograph of Kim asleep, and that when he saw Kim asleep, Kim was at a desk in a cubical. (Doc. #17-1 at p.17, Dep. p. 62:20-64:3).

Meeks relied in making her decision to terminate him.   Initially, Whetstone noted that the statements attached to Meeks's affidavit are dated after the investigation and so could not have been relied upon by Meeks.   SL Alabama, however, has substituted, with leave of court, the statements which were disclosed to Meeks during her investigation.

In reply to the substituted statements, Whetstone points out that Marbury's handwritten statement is "11-2-**10**   I saw Ricky sleep on the forklift at 10:00 until 10:15 today Friday." (Doc. #24 at p.8) (emphasis added). [5]   Leonard, however, gives the date of November 2, **2012** (Doc. #24 at p.6), which is consistent with the other record evidence.[6]   Whetstone also argues that Marbury's statement indicates that he observed Whetstone sleeping for 15 minutes, but that Meeks's investigation statement says that Whetstone was asleep for 5-6 minutes. Whetstone argues, therefore, that questions of fact have been raised as to whether Whetstone was asleep and the date of the alleged sleeping incident, which preclude summary judgment.

While Marbury's handwritten statement is arguably somewhat inconsistent with other record evidence, those inconsistencies are not sufficient to create a genuine issue of material fact in this case.   First, Marbury's statement does not contradict that Whetstone was observed sleeping on a piece of running machinery.   Second, even if the evidence were sufficiently contradictory so as to create a question of fact as to whether Whetstone committed the work rule violation for the purpose of establishing a prima facie case, the evidence is uncontroverted that Meeks received a report from two people, a photograph, and statements from employees that Whetstone was

---

[5] Marbury's writing is unclear and could be read as stating "10:00 to 10:15" or "10:10 to 10:15," but construing it in a light most favorable to the non-movant, the court will accept that it says "10:00 to 10:15."

[6] Marbury also said that he saw Whetstone asleep on a Friday.   The court takes judicial notice that November 2, 2010 was a Tuesday, while November 2, 2012 was a Friday.   (Doc. #24 at p.8).

sleeping on the job, and supports the articulated reasons for Whetstone's termination. Therefore, the one statement which arguably contains a different date and length of time of Whetstone's infraction is not sufficient to create a question of fact as to whether Meeks honestly believed that Whetstone was asleep on the job on a piece of running equipment. *Damon v. Fleming Supermarkets of Florida, Inc.,* 196 F.3d 1354, 1363 (11th Cir. 1999) (stating that "[a]n employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct."); *EEOC v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1176 (11th Cir. 2000) (stating that when an employer's investigation "produces contradictory accounts of significant historical events, the employer can lawfully make a choice between the conflicting versions   . . . as long as the choice is an honest choice.").

The court concludes, therefore, that Whetstone has failed to create a genuine issue of material fact as to his race discrimination in termination claims, and summary judgment is due to be GRANTED as to those claims.

2.  Transfer

SL Alabama argues that Whetstone cannot establish a prima facie case of discrimination in the timing of his transfer because his allegation that he was not transferred from second shift to first shift before other employees is not a sufficient adverse action. SL Alabama also states that Whetstone has failed to point to a similarly-situated white employee who was treated more favorably.

Whetstone has not responded to the arguments regarding a transfer claim, nor presented any evidence to create a question of fact as to such a claim. The court, therefore, considers any such claim, to the extent that one was brought, to have been abandoned. *Resolution Trust Corp. v.*

*Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.1995) (holding a non-movant's silence on an issue after a movant raises the issue in a summary judgment motion is construed as an abandonment of the claim).

## V. CONCLUSION

For the reasons discussed, it is hereby ORDERED that the Motion for Summary Judgment (Doc. #15) is GRANTED. A separate Final Judgment will be entered in accordance with this Memorandum Opinion and Order.

Done this 8th day of August, 2014.

        /s/ W. Harold Albritton
        W. HAROLD ALBRITTON
        SENIOR UNITED STATES DISTRICT JUDGE